FILED
2012 JUN 31 P 2: 10
RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
N. DIST. OF CALIFORNIA

Joseph J. Siprut*
*jsiprut@siprut.com*
James M. McClintick
*jmcclintick@siprut.com*
SIPRUT PC
122 South Michigan Ave.
Suite 1850
Chicago, Illinois 60603
312.588.1440
Fax: 312.427.1850

Todd C. Atkins
*tatkins@siprut.com*
SIPRUT PC
701 B Street, Suite 1170
San Diego, CA 92101
619. 255.2380
Fax: 619.231.4984

*Pro hac vice* admittance to be sought

E-filing          JCS

Counsel for Plaintiffs and the Proposed Putative Classes

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

TODD BURTON, on behalf of himself and all others similarly situated,

        Plaintiff,

    v.

TIME WARNER CABLE INC.,

        Defendant.

CV 12 2828

Case No.

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

ORIGINAL

1    Plaintiff Todd Burton ("Plaintiff"), individually and on behalf of all others similarly
2  situated, by and through his counsel, brings this Class Action Complaint against Defendant Time
3  Warner Cable Inc. ("Time Warner" or "Defendant"). Plaintiff, on his own behalf and on behalf
4  of a class of similarly situated individuals, alleges as follows upon personal knowledge as to
5  himself and his own acts and experiences, and, as to all other matters, upon information and
6  belief, including investigation conducted by his attorneys.

7                              **I. NATURE OF THE ACTION**

8    1.    Cable and satellite television are a staple in American households, viewed by
9  many to be as ordinary and essential as gas and electric service. Time Warner uses its position
10  as one of the nation's largest providers of cable television to collect personal information – such
11  as names, addresses, social security numbers, and credit card numbers – from tens of millions of
12  consumers across the country.

13    2.    After consumers terminate their service with Time Warner, however, and this
14  information is no longer needed to provide service or collect payment, Time Warner continues to
15  maintain personally identifiable information on all of its previous customers indefinitely. This
16  conduct violates the Cable Communications Policy Act, 47 U.S.C. § 551, *et. seq.* ("CCPA"),
17  which requires cable operators to destroy personally identifiable information when it is no longer
18  required for the purpose for which it was collected.

19    3.    Moreover, consumers are unaware that their personally identifiable information is
20  retained indefinitely by Time Warner, as Time Warner fails to send annual privacy notices
21  informing consumers that Time Warner continues to retain their information. This conduct
22  constitutes additional violations of CCPA.

23    4.    Accordingly, Plaintiffs assert claims on their own behalf and on behalf of the
24  other members of the below-defined Class for violations of CCPA, 47 U.S.C. § 551 (a) & (e),
25  plus additional claims under California state law on behalf of a California Subclass.

26
27
28

CLASS ACTION COMPLAINT

-2-

1

## II. JURISDICTION AND VENUE

2    5.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, which
3 confers upon the Court original jurisdiction over all civil actions arising under the laws of the
4 United States, and pursuant to 18 U.S.C. §§ 2520 and 2707 and 18 U.S.C. § 1030. This Court
5 also has supplemental jurisdiction over Plaintiffs' state statutory claims and common-law claims
6 under 28 U.S.C. § 1367.

7    6.    In addition, this Court has original jurisdiction pursuant to 28 U.S.C. §
8 1332(d)(2). In the aggregate, Plaintiffs' claims and the claims of the other members of the Class
9 exceed $5,000,000 exclusive of interest and costs, and there are numerous class members who
10 are citizens of states other than Time Warner.

11    7.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1301(a)(2), 1391(b)(2),
12 and 1391(c)(2) as: a substantial part of the events and/or omissions giving rise to the claims
13 emanated from activities within this District, and Time Warner conducts substantial business in
14 this District. Specifically, Time Warner provides cable and Internet services for residents and
15 commercial facilities in towns and cities throughout this District, subjecting it to this Court's
16 personal jurisdiction and making it a "resident" of this District for purposes of venue.

17

## III. PARTIES

18 *Plaintiff*

19    8.    Todd Burton ("Burton") is a natural person and citizen of the State of California.
20 *Defendant*

21    9.    Time Warner is a Delaware corporation headquartered at 60 Columbus Circle in
22 New York City, New York. Time Warner is one of the nation's most prominent cable providers,
23 servicing more than 20 million cable customers. Time Warner provides cable services to
24 customers in 28 states, including the State of California.

25

26

27

28

1

# IV.  FACTUAL BACKGROUND

2

*The Cable Communications Policy Act*

3      10.      On October 30, 1984, Congress passed the Cable Communications Policy Act

4   ("CCPA") in order to promote competition among providers of cable services and establish a

5   national policy concerning cable communications and their operators.  An important objective of

6   Congress in establishing such a policy was to protect cable subscribers' sensitive personal

7   information from misuse and improper disclosure. To that end, Congress made sure that the Act

8   incorporated privacy guidelines jointly established several years earlier by the 34 nations

9   comprising the Organization for Economic Cooperation and Development.

10      11.      When CCPA was under debate, legislative leaders noted that both common-sense

11   privacy concerns and the constitutional rights of citizens were at stake:

12

> Cable systems, particularly those with a 'two-way' capability, have
> an enormous capacity to collect and store personally identifiable
> information about each cable subscriber.  Subscriber records from
> interactive systems can reveal details about bank transactions,
> shopping habits, political contributions, viewing habits and other
> significant personal decisions.   It is [therefore] important that
> national cable legislation establish a policy to protect the privacy
> of cable subscribers.  A national policy is needed because, while
> some franchise agreements restrict the cable operator's use of such
> information, privacy issues raise a number of federal concerns,
> including protection of the subscribers' first, fourth, and fifth
> amendment rights.   At the same time, such a policy must also
> recognize and unnecessarily or unreasonably impede those flows
> of information necessary to provide the service to the subscribers.

13

14

15

16

17

18

19

20

21   H.R. Rep. 98-934 at 4666-67 (1984).

22      12.      These observations, now nearly 30 years old, are just as relevant today.

23   Subscribers continue to disclose some of their most sensitive identifying information to their

24   cable operator as a condition to entering into a contract for service.  Now – far more than ever

25   before – Time Warner and other cable operators are equipped to rapidly collect and indefinitely

26   retain large volumes of this valuable data in their electronic records.

27

28

1    13.    There are numerous serious and troubling privacy issues implicated by Time
2  Warner's practice of retaining and misusing their former customers' personal information,
3  including the risk of identity theft and conversion of personal financial accounts.

4    14.    Accordingly, CCPA affords consumers significant protection with respect to the
5  collection, maintenance, and disclosure of personally identifiable information ("PII") provided
6  by the subscriber to the cable operator.

7    15.    Specifically, CCPA requires cable operators to provide annual notice setting forth
8  the "nature of personally identifiable information collected;" "the nature, purpose, and frequency
9  of any disclosure" of that information; the "period during which such information will be
10  maintained;" "the times and place at which the subscriber may have access to such information;"
11  and the limitations imposed on the cable operator by this provision of CCPA. 47 U.S.C. §
12  551(a)(1).

13    16.    In addition, CCPA governs the way that cable operators are to destroy the PII of
14  former subscribers.    CCPA requires that cable operators must destroy the PII of former
15  subscribers "if the information is no longer necessary for the purpose for which it was collected"
16  and there are no outstanding requests or orders for such information. 47 U.S.C. § 551(e).

17    17.    Under CCPA, "personally identifiable information" is not specifically defined.
18  However, the courts have concluded that it broadly encompasses "specific information about the
19  subscriber, or a list of names and addresses on which the subscriber is included."[1]

20  *Time Warner's Collection of Consumers' PII*

21    18.    Time Warner has been in existence since 1989, when it was formed through the
22  merger of Time, Inc.'s cable division and Warner Cable. Time Warner has continued to grow
23  rapidly, offering a range of services that includes cable television, DVR services, and digital
24  phone subscriptions.    Time Warner serves more than 20 million cable customers, nearly 9

25

26

27    [1] *See, e.g., Scofield v. Telecable of Overland Park, Inc.*, 973 F.2d 874, 876 fn. 2 (10th Cir. 1992).

28
CLASS ACTION COMPLAINT

-5-

1  million high-speed Internet customers, and more than 4 million voice customers.[2]  In 2011, the

2  company earned nearly \$20 billion in gross revenues and had a profit of approximately \$1.6

3  billion.[3]

4  19.    Time Warner requests that subscribers provide PII to Time Warner in order to

5  receive cable service, including social security number, address, phone number, and credit and

6  debit card information.

7  20.    Once Time Warner obtains that information, it maintains a digital record system

8  with every subscriber's personal information, adding to each consumer's file as they acquire

9  more information.

10  21.    Time Warner's online Privacy Policy provides as follows:

11  We maintain personally identifiable information about subscribers
for as long as it is necessary for business purposes. This period of
12  time may last as long as you are a subscriber and, if necessary, for
additional time so that we can comply with tax, accounting and
13  other legal requirements. When information is no longer needed
for these purposes, it is our policy to destroy or anonymize it.[4]
14

15  **_Time Warner's Unlawful Retention of Consumers' PII_**

16  22.    While Time Warner's Privacy Policy claims that consumer information is

17  destroyed after it is no longer needed for business, tax, accounting, or legal purposes, in practice,

18  Time Warner simply retains consumers' PII indefinitely.  Moreover, "anonymizing" the data

19  does not alone constitute compliance with CCPA.

20  23.    This indefinite retention of PII is prohibited by CCPA, which requires cable

21  operators to "destroy personally identifiable information if the information is no longer necessary

22  for the purpose for which it was collected."  47 U.S.C. § 551(e).

23

24

25  [2] http://www.timewarnercable.com/Corporate/about/highlights/default.html (last visited May 29, 2012).

26  [3] http://en.wikipedia.org/wiki/Time_Warner_Cable (last visited May 29, 2012).

27  [4] http://help.twcable.com/html/twc_privacy_notice.html (last visited May 29, 2012).

28

CLASS ACTION COMPLAINT

-6-

1    24.    Time Warner also fails to provide CCPA-mandated privacy notices to customers
2  whose accounts have been closed, but whose information is still retained by Time Warner.
3  Those consumers are thus unaware that their information is retained indefinitely by Time
4  Warner.

5    25.    CCPA requires that cable operators provide written notice at least once a year
6  regarding the retention and disclosure of PII, "clearly and conspicuously" informing the
7  consumer of "the nature of personally identifiable information collected ... and the nature of the
8  use of such information; [ ] the nature, frequency, and purpose of any disclosure which may be
9  made of such information, including an identification of the types of persons to whom the
10 disclosure may be made; [ ] the period during which such information will be maintained by the
11 cable operator; [and] the times and places at which the subscriber may have access to such
12 information." 47 U.S.C. § 551(a).

13    26.    After the termination of services, Time Warner fails to provide notice to
14 consumers regarding the type of PII collected and retained, and any disclosure of that
15 information that may have occurred.

16 *Consumers Place a High Value on Their PII*

17    27.    At a Federal Trade Commission ("FTC") public workshop in 2001, then-
18 Commissioner Orson Swindle described the value of a consumer's personal information as
19 follows:

20           The use of third party information from public records, information
21           aggregators and even competitors for marketing has become a
             major facilitator of our retail economy. Even [Federal Reserve]
22           Chairman [Alan] Greenspan suggested here some time ago that it's
             something on the order of the life blood, the free flow of
23           information.[5]

24

25

26    ───────────────
         [5] *The Information Marketplace: Merging and Exchanging Consumer Data*,
27    http://www.ftc.gov/bcp/workshops/infomktplace/transcript.htm (last visited May 20, 2012).

28
CLASS ACTION COMPLAINT
                                          -7-

28.     Though Commissioner's Swindle's remarks are more than a decade old, they are even more relevant today, as consumers' personal data functions as a "new form of currency" that supports a \$26 billion per year online advertising industry in the United States.[6]

29.     The FTC has also recognized that consumer data is a new – and valuable – form of currency.  In a recent FTC roundtable presentation, another former Commissioner, Pamela Jones Harbour, underscored this point by observing:

> Most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable.  Data is currency.  The larger the data set, the greater potential for analysis – and profit.[7]

30.     Recognizing the high value that consumers place on their PII, many companies now offer consumers an opportunity to sell this information to advertisers and other third parties. The idea is to give consumers more power and control over the type of information that they share – and who ultimately receives that information. And by making the transaction transparent, consumers will make a profit from the surrender of their PII.[8]   This business has created a new market for the sale and purchase of this valuable data.[9]

---

[6] *See Web's Hot New Commodity: Privacy*,
http://online.wsj.com/article/SB10001424052748703529004576160764037920274.html (last visited May 20, 2012).
[7] *Statement of FTC Commissioner Pamela Jones Harbour* (Remarks Before FTC Exploring Privacy Roundtable), http://www.ftc.gov/speeches/harbour/091207privacyroundtable.pdf (last visited May 20, 2012).
[8] *You Want My Personal Data? Reward Me for It*,
http://www.nytimes.com/2010/07/18/business/18unboxed.html (last visited May 20, 2012).
[9] *See Web's Hot New Commodity: Privacy*,
http://online.wsj.com/article/SB10001424052748703529004576160764037920274.html (last visited May 20, 2012).

1    31.    In fact, consumers not only place a high value on their PII, but also place a high

2 value on the *privacy* of this data. Thus, the question is not *whether* consumers value such

3 privacy; the question is "*how much* [consumers] value" that privacy.[10]

4    32.    Researchers have already begun to shed light on how much consumers value their

5 data privacy – and the amount is considerable. Indeed, studies confirm that "when [retailers']

6 privacy information is made more salient and accessible, some consumers are willing to pay a

7 premium to purchase from privacy protective websites."[11]

8    33.    When consumers were surveyed as to how much they valued their personal data in

9 terms of its protection against improper access and unauthorized secondary use – two concerns at

10 issue here – they valued the restriction of improper access to their data at between $11.33 and

11 $16.58 per website, and prohibiting secondary use to between $7.98 and $11.68 per website.[12]

12    34.    Given these facts, any company that transacts business with a consumer and then

13 retains that consumer's PII in contravention of statutorily guaranteed privacy protections has thus

14 deprived that consumer of the full monetary value of the consumer's transaction with the

15 company.

16 *Facts Pertaining to Plaintiff Burton*

17    35.    In or about August 2002, Burton signed up for Time Warner cable services. In

18 order to activate his service, Time Warner required Burton to provide Time Warner with various

19 forms of PII, including his address, home and work telephone numbers, social security number,

20 and credit card information.

21    36.    In or about December 2009, Burton canceled his service with Time Warner.

22

23

24    [10] Hann *et al.*, *The Value of Online Information Privacy: An Empirical Investigation* (Mar. 2003)
at 2, *available at* http://www.comp.nus.edu.sg/~ipng/research/privacy.pdf (emphasis added) (last visited
25 April 25, 2012).
    [11] Tsai, Cranor, Acquisti, and Egelman, *The Effect of Online Privacy Information on Purchasing*
26 *Behavior*, 22(2) Information Systems Research 254, 254 (June 2011).

27    [12] *Id.*

28

CLASS ACTION COMPLAINT

-9-

1      37.    On information and belief, as of the date of this filing, Time Warner still retains
2  Burton's PII.

3      38.    Since canceling his service, Burton has never received notice from Time Warner
4  informing him that Time Warner still retains his PII. Specifically, Burton has not received any
5  notices from Time Warner informing him of the nature of the information collected; the nature,
6  purpose and frequency of any disclosure which was made of this information; the period of time
7  during which Time Warner will maintain this information; and the time and place that Burton
8  may gain access to this information.

9  ## V.   CLASS ACTION ALLEGATIONS

10      39.    Plaintiff brings Count I, as set forth below, on behalf of himself and as a class
11  action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil
12  Procedure on behalf of a class defined as:

13
14          All persons in the United States who signed up for cable service
        with Time Warner, and whose personally identifiable information
        was retained by Time Warner after the termination of services (the
15          "Retention Class").

16  Excluded from the Retention Class are Time Warner and its subsidiaries and affiliates; all
17  persons who make a timely election to be excluded from the Class; governmental entities; and
18  the judge to whom this case is assigned and any immediate family members thereof.

19      40.    Plaintiff brings Count II, as set forth below, on behalf of himself and as a class
20  action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil
21  Procedure on behalf of a class defined as:

22          All persons in the United States who signed up for cable service
        with Time Warner, and who were never issued annual written
23          notices from Time Warner regarding Time Warner's retention or
        disclosure of their personally identifiable information (the "Notice
24          Class").
25
26
27
28

1  Excluded from the Notice Class are Time Warner and its subsidiaries and affiliates; all persons

2  who make a timely election to be excluded from the Class; governmental entities; and the judge

3  to whom this case is assigned and any immediate family members thereof.

4      41.    Plaintiff brings Counts III-V, as set forth below, on behalf of himself and as a

5  class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of

6  Civil Procedure on behalf of a class defined as:

7              All persons residing in the State of California who signed up for
8              cable service with Time Warner, and whose personally identifiable
               information was retained by Time Warner after the termination of
9              services (the "California State Class").

10  Excluded from the California State Class are Time Warner and its subsidiaries and affiliates; all

11  persons who make a timely election to be excluded from the Class; governmental entities; and

12  the judge to whom this case is assigned and any immediate family members thereof.

13      42.    The Retention Class, Notice Class, and California State Class shall be referred to

14  collectively as "the Class" below unless otherwise specified.

15      43.    Certification of Plaintiff's claims for classwide treatment is appropriate because

16  Plaintiff can prove the elements of his claims on a classwide basis using the same evidence as

17  would be used to prove those elements in individual actions alleging the same claims.

18      44.    **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the

19  class are so numerous that individual joinder of all Class members in impracticable. On

20  information and belief, there are thousands of consumers who have been affected by Time

21  Warner's wrongful conduct. The precise number of the Class members and their addresses is

22  presenty unknown to Plaintiff, but may be ascertained from Time Warner's books and records.

23  Class members may be notified of the pendency of this action by recognized, Court-approved

24  notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings,

25  and/or published notice.

26

27

28

CLASS ACTION COMPLAINT

-11-

45. **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

   a. whether Time Warner engaged in the conduct as alleged herein;

   b. whether Plaintiff and the other Class members are entitled to actual, statutory, or other forms of damages, and other monetary relief and, if so, in what amount(s); and

   c. whether Plaintiff and other Class members are entitled to equitable relief, including but not limited to injunctive relief and restitution.

46. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through the uniform misconduct described above.

47. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate representatives of the Class because his interests do not conflict with the interests of the other Class members he seek to represent; he has retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously. The Class members' interests will be fairly and adequately protected by Plaintiff and his counsel.

48. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Time Warner has acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to Class members as a whole.

49. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are

CLASS ACTION COMPLAINT

-12-

1 relatively small compared to the burden and expense that would be required to individually

2 litigate their claims against Time Warner, so it would be impracticable for Class members to

3 individually seek redress from Time Warner's wrongful conduct. Even if Class members could

4 afford individual litigation, the court system could not. Individualized litigation creates a

5 potentional for inconsistent or contradictory judgments, and increases the delay and expense to

6 all parties and the court system. By contrast, the class action device presents far fewer

7 management difficulties, and provides the benefits of single adjudication, economy of scale, and

8 comprehensive supervision by a single court.

## VI. CLAIMS ALLEGED

### COUNT I

**Failure to Destroy Personally Identifiable Information**
**Violation of § 551(e) of the Cable Communications Policy Act**
**(On Behalf of the Retention Class)**

50.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1-49 as though fully set forth herein.

51.     Time Warner is a "cable operator" as defined by CCPA because Time Warner provides "cable services," which is "the one-way transmission to subscribers of [ ] video programming, or [ ] other programming service; [and] subscriber interaction, if any, which is required for the selection or use of such video programming or other programming service." 47 U.S.C. § 522(5) & (6).

52.     CCPA mandates, among other things, that a cable operator "destroy personally identifiable information if the information is no longer necessary for the purpose for which is was collected." 47 U.S.C. § 551(e).

53.     After Plaintiff's account and the accounts of each of the members of the Retention Class were terminated, Time Warner continued to maintain Plaintiffs' PII even though such information was no longer necessary to maintain for the purpose for which it was collected.

54.     The foregoing conduct violates 47 U.S.C. § 551(e).

28

CLASS ACTION COMPLAINT

-13-

55. Plaintiff and the Retention Class have suffered injuries as a result of Time Warner's violation of 47 U.S.C. § 551. Time Warner's failure to destroy the PII of Plaintiff and the Retention Class, as required 47 U.S.C. § 551, constitutes injury in the form of a direct invasion of their federally protected privacy rights. In addition, Time Warner's failure to comply with CCPA has deprived Plaintiff and the Retention Class of their ability to make informed decisions with respect to their privacy.

56. Moreover, since Plaintiff and the Retention Class purchased cable services from Time Warner, and Time Warner was obligated to comply with CCPA, Time Warner's failure to destroy their PII deprived them of the full value of the services that they bargained and paid for. Because Plaintiff and the Retention Class ascribe monetary value to their ability to control their PII, Plaintiff and the Retention Class have sustained, and continue to sustain, monetary and economic injuries as a direct and proximate result of Time Warner's violation of 47 U.S.C. § 551.

57. Plaintiff's and the Retention Class' PII constitutes personal property. Time Warner's failure to comply with 47 U.S.C. § 551 has also deprived Plaintiff and the Retention Class of the opportunity to control that personal property for its own financial gain. Accordingly, Plaintiff and the Retention Class has sustained, and continue to sustain, monetary and economic injuries as a direct and proximate result of Time Warner's violation of 47 U.S.C. § 551.

58. CCPA provides a private right of action to consumers who have been aggrieved by a violation of 47 U.S.C. § 551. Specifically, any person aggrieved by any act of a cable operator violating 47 U.S.C. § 551 may recover "actual damages but not less than liquidated damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is higher." 47 U.S.C. § 551(f)(2)(A).

CLASS ACTION COMPLAINT

-14-

1    59.    In addition, any person aggrieved by any act of a cable operator violating 47

2  U.S.C. § 551 may recover punitive damages and "reasonable attorneys' fees and other litigation

3  costs reasonably incurred." 47 U.S.C. § 551(f)(2)(B)&(C).

4    60.    Plaintiff, on behalf of himself and the Retention Class, therefore seeks redress as

5  provided by 47 U.S.C. § 551, including liquidated damages to the full extent permitted by

6  CCPA, punitive damages, and reasonable attorneys' fees and other litigation costs.

7                              **COUNT II**

8             **Failure to Provide Adequate Notice**
   **Violation of § 551(a) of the Cable Communications Policy Act**
9                   **(On Behalf of the Notice Class)**

10   61.    Plaintiff incorporates by reference the allegations contained in Paragraphs 1-49 as

11 though fully set forth herein.

12   62.    After the termination of services, Time Warner continued to maintain Plaintiff's

13 PII and the PII of each of the members of the Notice Class.

14   63.    Plaintiff and each of the members of the Notice Class did not receive a yearly

15 privacy notice from Time Warner as required under CCPA.

16   64.    The foregoing conduct violates 47 U.S.C. § 551(a).

17   65.    Plaintiff and the Notice Class have suffered injuries as a result of Time Warner's

18 violation of 47 U.S.C. § 551. Time Warner's failure to issue annual notices under CCPA, as

19 required by 47 U.S.C. § 551, constitutes injury in the form of a direct invasion of the federally

20 protected privacy rights of Plaintiff and the Notice Class. In addition, Time Warner's failure to

21 comply with CCPA has deprived Plaintiff and the Notice Class of their ability to make informed

22 decisions with respect to their privacy.

23   66.    Moreover, since Plaintiff and the Notice Class purchased cable services from

24 Time Warner, and Time Warner was obligated to comply with CCPA, Time Warner's failure to

25 issue the requisite annual notices deprived them of the full value of the services that they

26 bargained and paid for. Because Plaintiff and the Notice Class ascribe monetary value to their

27 ability to control their PII, Plaintiff and the Notice Class have sustained, and continue to sustain,

28

CLASS ACTION COMPLAINT

-15-

1 | monetary and economic injuries as a direct and proximate result of Time Warner's violation of
2 | 47 U.S.C. § 551.

3 | 67. Plaintiff's and the Notice Class' PII constitutes personal property. Time Warner's
4 | failure to comply with 47 U.S.C. § 551 has also deprived Plaintiff and the Notice Class of the
5 | opportunity to control that personal property for its own financial gain. Accordingly, Plaintiff
6 | and the Notice Class have sustained, and continue to sustain, monetary and economic injuries as
7 | a direct and proximate result of Time Warner's violation of 47 U.S.C. § 551.

8 | 68. CCPA provides a private right of action to consumers who have been aggrieved
9 | by a violation of 47 U.S.C. § 551. Specifically, any person aggrieved by any act of a cable
10 | operator violating 47 U.S.C. § 551 may recover "actual damages but not less than liquidated
11 | damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is
12 | higher." 47 U.S.C. § 551(f)(2)(A).

13 | 69. In addition, any person aggrieved by any act of a cable operator violating 47
14 | U.S.C. § 551 may recover punitive damages and "reasonable attorneys' fees and other litigation
15 | costs reasonably incurred." 47 U.S.C. § 551(f)(2)(B)&(C).

16 | 70. Plaintiff, on behalf of himself and the Notice Class, therefore seeks redress as
17 | provided by 47 U.S.C. § 551, including liquidated damages to the full extent permitted by
18 | CCPA, punitive damages, and reasonable attorneys' fees and other litigation costs.

19 |
## COUNT III
### Violation of the California Customer Records Act,
### Cal.Civ.Code § 1798.80, *et seq.*
### (On Behalf of the California State Class)

22 | 71. Plaintiff adopts and incorporates by reference Paragraphs 1-49 of this Complaint
23 | as if fully set forth herein.

24 | 72. The California Customer Records Act ("CCRA") provides, in pertinent part, that

25 |
26 |
27 |
28 |

A business shall take all reasonable steps to dispose, or arrange for the disposal, of customer records within its custody or control containing personal information when the records are no longer to be retained by the business by (a) shredding, (b) erasing, or (c) otherwise modifying the personal information in those records to make it unreadable or indecipherable through any means.

Cal.Civ.Code § 1798.81.

73.     Under the CCRA, "personal information" is defined as

any information that identifies, relates to, describes, or is capable of being associated with, a particular individual, including, but not limited to, his or her name, signature, social security number, physical characteristics or description, address, telephone number, passport number, driver's license or state identification card number, insurance policy number, education, employment, employment history, bank account number, credit card number, debit card number, or any other financial information, medical information, or health insurance information[.]

Cal.Civ.Code § 1798.80 (emphasis added).

74.     Plaintiff and the other members of the California State Class cancelled their subscription to and no longer use Time Warner's services. Therefore, Time Warner no longer has any reason to retain the sensitive personal information of Plaintiff and the California State Class. Nonetheless, Time Warner has continued to retain this personal information in its records.

75.     In addition, on information and belief, Time Warner has not taken a single step toward shredding, erasing, encrypting, or otherwise modifying Plaintiff's and the California State Class' personal information so as to make it unreadable or undecipherable by others.

76.     Plaintiff and the California State Class have suffered injuries as a result of Time Warner's violation of the CCRA. Time Warner's failure to destroy their PII as required by the CCRA constitutes injury in the form of a direct invasion of their statutory rights. In addition, Time Warner's failure to comply with the CCRA has deprived Plaintiff and the California State Class of their ability to make informed decisions with respect to their privacy.

77.     Moreover, since Plaintiff and the California State Class purchased cable services from Time Warner, and Time Warner was obligated to comply with the CCRA, Time Warner's

1  failure to destroy their PII deprived them of the full value of the services that they bargained and
2  paid for. Because Plaintiff and the California State Class ascribe monetary value to their ability
3  to control their PII, Plaintiff and the California State Class have sustained, and continue to
4  sustain, monetary and economic injuries as a direct and proximate result of Time Warner's
5  violation of the CCRA.

6      78.    Plaintiff's and the California State Class' PII constitutes personal property. Time
7  Warner's failure to comply with the CCRA has also deprived Plaintiff and the California State
8  Class of the opportunity to control that personal property for its own financial gain.
9  Accordingly, Plaintiff and the California State Class have sustained, and continue to sustain,
10  monetary and economic injuries as a direct and proximate result of Time Warner's violation of
11  the CCRA.

12      79.    The CCRA provides a private right of action to consumers. Specifically, it states
13  that "[a]ny customer injured by a violation of this title may institute a civil action to recover
14  damages." Cal.Civ.Code § 1798.84(b). In addition, the CCRA provides that "any business that
15  violates, proposes to violate, or has violated this title may be enjoined." Cal.Civ.Code §
16  1798.84(e).

17      80.    Plaintiff, on his own behalf and on behalf of the other members of the California
18  State Class, seeks judgment in her favor and against Time Warner, and awarding her and the
19  other members of the California State Class injunctive relief and the maximum damages
20  available under Cal.Civ.Code § 1798.84.

21                              **COUNT IV**
22                    **Breach of Implied Contract**
                **(On Behalf of the California State Class)**

23      81.    Plaintiff adopts and incorporates by reference paragraphs 1-60 and 71-80 of this
24  Complaint as if fully set forth herein.

25

26

27

28
CLASS ACTION COMPLAINT

-18-

1    82.    Those who subscribed to Time Warner's cable service, including Plaintiff, were

2  required by Time Warner to provide their social security number, address, phone number, and

3  credit card and debit card information.

4    83.    In providing this personal data to Time Warner, Plaintiff and other members of

5  the California State Class entered into an implied contract with Time Warner (the "Contract").

6  Pursuant to the Contract, Time Warner became obligated to safeguard this data through all

7  reasonable measures. This obligation includes complying with industry standards.

8    84.    The industry standard applicable to the credit-card transaction described above is

9  set forth in Requirement 3.1 of the Data Security Standard (DSS) promulgated by the Payment

10  Card Industry Security Standards Council. Specifically, that standard requires the merchants to

11  implement the following security measures:

12  
13          Keep cardholder data storage to a minimum by implementing data retention and
            disposal policies, procedures and processes, as follows.

14          Implement a data retention and disposal policy that includes:
15              • Limiting data storage amount and retention time to that which is required
                  for legal, regulatory, and business requirements
16              • Processes for secure deletion of data when no longer needed
                • Specific retention requirements for cardholder data
17              • A quarterly automatic or manual process for identifying and securely
                  deleting stored cardholder data that exceeds defined retention
18                requirements[.][13]

19    85.    Time Warner breached its Contract with consumers by failing to adopt and

20  comply with the foregoing industry-standard practices, and by failing to destroy PII after the

21  information is no longer necessary for the purpose for which it was collected.

22    86.    In addition, because the laws existing at the time and place of the making of the

23  Contract are and were incorporated into the Contract, the Contract included obligations for the

24  parties to abide by all applicable laws, including CCPA and the CCRA.

25
26  _____
27  [13] PCI Security Standards Council LLC, Navigating PCI DDS: Understanding the Intent of the
     Requirements, v2.0 (October 2010), p. 20.

28  CLASS ACTION COMPLAINT

-19-

1    87.    Plaintiff and the California State Class performed their obligations under the
2    Contract by paying the consideration owed to Defendant for the provision of cable service, and
3    by complying with all applicable laws then in force.

4    88.    Time Warner's failure to perform its contractual obligations imposed by CCPA
5    and the CCRA – *i.e.*, the timely destruction of consumers' PII – constitutes a material breach of
6    the Contract.

7    89.    Plaintiff and the California State Class have suffered actual damages as a result of
8    Time Warner's breach in the form of the value Plaintiff and the California State Class ascribe to
9    the confidentiality and timely destruction of their PII. This amount is tangible and can be
10   calculated at trial.

11   90.    Further, a portion of the services purchased by Plaintiff and the California State
12   Class were intended to pay for Time Warner's costs in timely destroying its customers' PII, as
13   required by CCPA and the CCRA.

14   91.    Because Plaintiff and the California State Class were denied services that they
15   bargained and paid for and were entitled to receive—*i.e.*, confidentiality of their PII and timely
16   destruction of same—Plaintiff and the California State Class incurred actual monetary damages
17   in that they overpaid for the services they bargained for.

18   92.    Accordingly, Plaintiff and the California State Class seek an order declaring that
19   Time Warner's conduct constitutes a breach of contract, and awarding Plaintiff and the
20   California State Class damages in an amount to be calculated at trial.

21
                                    **COUNT V**
22                      **Violation of Cal. Penal Code § 637.5**
                   **(On Behalf of the California State Class)**

23   93.    Plaintiff adopts and incorporates by reference Paragraphs 1-49 of this Complaint
24   as if fully set forth herein.

25   94.    Section 637.5 of the California Penal Code provides in pertinent part:

26

27

28
CLASS ACTION COMPLAINT

                                      -20-

Individual subscriber viewing responses or other individually identifiable information derived from subscribers *may be retained and used by a satellite or cable television corporation only to the extent reasonably necessary for billing purposes and internal business practices, and to monitor for unauthorized reception of services.* A satellite or cable television corporation may compile, maintain, and distribute a list containing the names and addresses of its subscribers if the list contains no other individually identifiable information and if subscribers are afforded the right to elect not to be included on the list. However, a satellite or cable television corporation shall maintain adequate safeguards to ensure the physical security and confidentiality of the subscriber information.

Cal. Penal Code § 637.5(b) (emphasis added).

95.     If a cable operator violates the above section of the California Penal Code, the subscriber may assert a private right of action for invasion of privacy. Section 637.5 provides in pertinent part:

Any aggrieved person may commence a civil action for damages for invasion of privacy against any satellite or cable television corporation, service provider, or person that leases a channel or channels on a satellite or cable television system that violates the provisions of this section.

Cal. Penal Code § 637.5(i) (the "California Penal Code").

96.     Plaintiff and the other members of the California State Class cancelled their subscription to and no longer use Time Warner's services. Therefore, Time Warner no longer has any reason to retain the sensitive personal information of Plaintiff and the California State Class. Nonetheless, Time Warner has continued to retain this personal information in its records.

97.     In addition, on information and belief, Time Warner has not taken a single step toward shredding, erasing, encrypting, or otherwise modifying Plaintiff's and the California State Class' personal information so as to make it unreadable or undecipherable by others.

98.     Plaintiff and the California State Class have suffered injuries as a result of Time Warner's violation of the California Penal Code. Time Warner's failure to destroy their PII as required by the California Penal Code constitutes injury in the form of a direct invasion of their statutory rights. In addition, Time Warner's failure to comply with the California Penal Code

1 has deprived Plaintiff and the California State Class of their ability to make informed decisions
2 with respect to their privacy.

3     99.     Moreover, since Plaintiff and the California State Class purchased cable services
4 from Time Warner, and Time Warner was obligated to comply with the California Penal Code,
5 Time Warner's failure to destroy their PII deprived them of the full value of the services that
6 they bargained and paid for. Because Plaintiff and the California State Class ascribe monetary
7 value to their ability to control their PII, Plaintiff and the California State Class have sustained,
8 and continue to sustain, monetary and economic injuries as a direct and proximate result of Time
9 Warner's violation of the California Penal Code.

10     100.     Plaintiff's and the California State Class' PII constitutes personal property. Time
11 Warner's failure to comply with the CCRA has also deprived Plaintiff and the California State
12 Class of the opportunity to control that personal property for their own financial gain.
13 Accordingly, Plaintiff and the California State Class have sustained, and continue to sustain,
14 monetary and economic injuries as a direct and proximate result of Time Warner's violation of
15 the California Penal Code.

16     101.     Plaintiff, on his own behalf and on behalf of the other members of the California
17 State Class, seeks judgment in her favor and against Time Warner, and awarding him and the
18 other members of the California State Class injunctive relief and the maximum statutory
19 damages available under California Penal Code.

## VII.   JURY DEMAND

21     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all
22 claims in this Complaint so triable.

CLASS ACTION COMPLAINT

-22-

1

## VIII. REQUEST FOR RELIEF

2          WHEREFORE, Plaintiff, individually and on behalf of the other members of the Classes

3 proposed in this Complaint, respectfully requests that the Court enter an Order awarding the

4 following relief:

5          A. Declaring that this action may be maintained as a class action, and certifying the

6              Classes as requested herein;

7          B. Enjoining Time Warner from the unlawful practices and statutory violations asserted

8              herein;

9          C. An Order awarding liquidated damages pursuant to CCPA;

10          D. An Order awarding punitive damages pursuant to CCPA;

11          E. An Order awarding compensatory damages pursuant to the California statutes and

12              common-law causes of action asserted herein;

13          F. An Order awarding attorneys' fees and costs pursuant to CCPA; and

14          G. Such other and further relief as may be just and proper.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

1 | Dated: May 31, 2012

Respectfully submitted,

2

TODD BURTON, individually and on
3 | behalf of all others similarly situated,

4

5 | By: _____

6 | One of the Attorneys for Plaintiffs
and the Proposed Putative Classes

7 | Joseph J. Siprut*
*jsiprut@siprut.com*
8 | James M. McClintick
*jmcclintick@siprut.com*
9 | SIPRUT PC
10 | 122 South Michigan Avenue
Suite 1850
11 | Chicago, Illinois 60603
312.588.1440
12 | Fax: 312.427.1850

13 | Todd C. Atkins
14 | *tatkins@siprut.com*
SIPRUT PC
15 | 701 B Street, Suite 1170
San Diego, CA 92101
16 | 619. 255.2380
17 | Fax: 619.231.4984

18 | *Pro hac vice* admittance to be sought
19

20 | 4844-6064-0527, v. 1

21

22

23

24

25

26

27

28